ROBERT L. LEACH, State Superintendent of Banking, Appellant, v. IOWA STATE SAVINGS BANK OF MANNING, Appellee; FIRST NATIONAL BANK OF COUNCIL BLUFFS, Intervener, Appellee.

BANKS AND BANKING: Insolvency—Preferences—Course of Dealing
1 —Effect. When a bank pays checks on foreign banks and remits said checks to its correspondent for ''collection and remittance,'' and when the *understanding and course of dealing* between said banks are for the remittance to be by draft, and such draft is executed and delivered, no *trust relation* is created, but the relation of general debtor and creditor is created, and there can be no preference in payment to the draft holder in the subsequent settlement of the affairs of the insolvent drawer.

**BANKS AND BANKING:**   Insolvency—Preferences—Drawer as Agent
2   **to Collect from Self.**  Principle reaffirmed that no relation of principal and agent—in other words, no trust relation—is created by the act of the transferee of a draft in sending it to the *drawer* for payment.

**BILLS AND NOTES:**   Drafts and Checks—Operation and Effect in re
3   **Assignment.**  Principle reaffirmed that the mere issuance of a draft works no equitable assignment to the payee of the funds of the drawer in the hands of the drawee, and consequently, in case of the subsequent insolvency of the drawer, the payee is not a preferred creditor.

ALBERT and MORLING, JJ., dissent.

Headnote 1:   7 C. J. pp. 627 (Anno.), 675, 751.   **Headnote 2:**   7 C. J. p. 675.   **Headnote 3:**   5 C. J. pp. 916, 921.

Headnote 3:   5 A. L. R. 1667; 5 R. C. L. 495.

*Appeal from Carroll District Court.*—M. E. HUTCHISON, Judge.

DECEMBER 14, 1926.

Application for the allowance of a preference against funds of a bank in the hands of a receiver.  The trial court allowed the preference, and the receiver appeals.  The facts appear in the opinion.—*Reversed.*

*Ben J. Gibson,* Attorney-general, and *Helmer & Minnich,* for appellant.

*Tinley, Mitchell, Ross & Mitchell,* for appellee.

PER CURIAM.—The defendant Iowa State Savings Bank was located at Manning, Iowa.  There was another bank in the same town, known as the First National Bank of Manning.  The

1. BANKS AND BANKING: insolvency: preferences: course of dealing: effect.

defendant had as its correspondent the intervener, the First National Bank of Council Bluffs, Iowa, with which bank it kept a deposit against which it issued its drafts.  For a long time, it had been the custom of the intervener to forward to the defendant checks which the intervener held against both the defendant and the First National Bank of Manning.  The

record discloses that at one time it had been the practice of the intervener to charge the account of the defendant with the checks which it held against the said two banks in the town of Manning, and to then forward said checks to the defendant. The record discloses that, about six months before the transaction in question, this method of procedure was abandoned; that the officers of the defendant objected to this plan of doing business by having checks sent to them by the intervener first charged against their account in said bank; and that thereafter all checks received by the intervener against the two banks in the town of Manning were forwarded to the defendant, and said bank then remitted for said checks by draft, which it forwarded to the intervener. This was the oral understanding between the banks, and the method pursued.

On October 13, 1923, the said intervener sent to the defendant its cash items on each of said banks in the town of Manning. The letter of advice accompanying said cash items recited: "We inclose the following cash items for collection and returns." On October 15th, a similar letter was sent to the defendant, inclosing cash items in the form of checks drawn against said defendant and against the First National Bank of Manning, and also against the Manning Creamery Company. It was the practice of the defendant, upon receipt of such a letter inclosing cash items, to at once make out a draft payable to the intervener, and usually drawn upon the correspondent bank of the defendant in Chicago, and when the checks had all been honored, at the close of the day's business, to forward said draft to the intervener. In the transactions involved in this action, the defendant issued its draft on the First National Bank of Chicago in favor of the intervener, on October 15, 1923, and another similar draft, in a different amount, on October 16, 1923, both being for the proceeds of checks forwarded to it under a letter of instructions as above set forth.

The defendant bank was closed by order of the superintendent of banking on October 17, 1923, and each of said drafts went to protest. At the time the defendant bank was closed, it had a balance in the First National Bank of Chicago, and also a balance in the intervener bank. The balance in the First National Bank of Chicago, upon which said drafts were drawn, was applied by said bank on bills payable and rediscounts of

the said Iowa State Savings Bank then in the hands of the Chicago bank. The balance in the intervener bank was paid by said bank in full to the receiver.

· This case is in some respects, similar to *Leach v. Citizens St. Bank (Federal Reserve Bank of Chicago, Intervener)*, 203 Iowa ——. In that case, cash items in the form of checks drawn solely against the receiving bank were forwarded to the latter "for collection and remittance." The letter of advice in the instant case was "for collection and returns." We held in that case that the relation of principal and agent was not created by the transaction; that the sending of the checks directly to the drawee bank was, in legal effect, no different than if the checks had been presented over the counter and payment demanded; and that no trust relation or agency as to such items was created by the transaction. The rule therein announced, if there were nothing more in the instant case, would be applicable as to a portion of the cash items forwarded which were drawn upon the receiving bank. In the instant case, however, a number of the cash items forwarded were drawn upon another bank, to wit, the First National Bank of Manning; and as to these items, following the rule announced in *Messenger v. Carroll Tr. & Sav. Bank,* 193 Iowa 608, the relation of principal and agent was created, and the fund so collected by the receiving bank was held as agent for its principal, the forwarding bank.

> 2. BANKS AND BANKING: insolvency: preferences: drawer as agent to collect from self.

At this point, another element enters into consideration. Without any dispute in the record, it is established that, some six months prior to the transactions in question, there had been an oral understanding between the intervener and the defendant bank that the method previously pursued, of charging all cash items to the defendant in advance, should be abandoned, and that thereafter the defendant bank would remit to the intervener for all cash items sent to the defendant, by forwarding to the intervener the defendant's draft therefor. This had been the regular course of dealing between the parties under an oral understanding to that effect for a period of at least six months. The transactions involved in this instance come under this oral understanding and manner of dealing between the two banks. Had the intervener bank desired to depart from this established

rule of dealing in forwarding the cash items involved in these particular transactions, it .was its duty to have so advised the defendant bank. This was not done. It expected to receive a draft for all items sent. Therefore, the established. rule between the two banks was that the cash items forwarded to the defendant by the intervener, whether drawn on the defendant bank or on the First National Bank of Manning, should all be remitted for to the intervener *by draft*. This was as much a part of the instructions, in view of the understanding and the established manner of dealing between the parties, as though the letter of advice forwarding the cash items had explicitly so stated. We. therefore have a situation where the intervener forwarded cash items to the defendant bank for collection, with an understanding by both parties that the defendant was to pay items drawn on it, and collect others, and make remittance for all to the intervener in a specific way, to wit, by the intervener's· draft. This brings the case squarely within the rule announced in *Leach v. Battle Creek Sav. Bank (Alexander, Intervener)*, 202 Iowa 875. The authorities are collected in the last cited case, and further discussion of the rule therein announced is unnecessary. The defendant bank having made remittance by draft, in accordance with the established understanding and course of dealing between the parties, the intervener is not now in a position to urge a claim of preference by virtue of nonpayment of said draft, against the funds in the hands of the receiver. It is in no different position than if it had presented the checks at defendant's counter, and requested and received a draft therefor. The trial court erred in ordering that said claim be allowed as a preference.

The question of whether or not the draft in question constituted a *pro tanto* assignment of funds is presented. That question is determined adversely to intervener's contention by

3. BILLS AND NOTES: drafts and checks: operation and effect *in re* assignment.

our holding in *Leach v. Mechanics Sav. Bank*, 202 Iowa 899, and further discussion of the question is unnecessary. ·

It follows that the district court erred in allowing the intervener's claim as a preference, and the order must therefore be, and it is,—*Reversed*.

DE GRAFF, C. J., and EVANS, STEVENS, and FAVILLE, JJ., concur.

VERMILION, ALBERT, and MORLING, JJ., concur in the result.

ALBERT and MORLING, JJ., dissent as to the *pro tanto* assignment question, for reasons set forth in dissent in *Leach v. Mechanics Sav. Bank*, 202 Iowa 899.