RICHARD VALENTINE, Appellant, v. L. A. ANDREW, Receiver, Appellee.

BANKS AND BANKING: Insolvency—Loss of Trust Relation. A principal who, instead of demanding cash of his collecting agent, his bank, accepts the certificates of deposit of the latter, thereby terminates the trust relation, becomes a simple depositor, and loses any right of preference in case of the insolvency of the bank; and this result is not overcome by oral testimony to the effect that no such result was intended.

Headnote 1: 7 C. J. p. 751.

Headnote 1: 38 L. R. A. (N. S.) 146; L. R. A. 1917F, 603; 3 R. C. L. 633.

*Appeal from Cerro Gordo District Court.*—C. H. KELLEY, Judge.

MARCH 15, 1927.

This is a claim for preference in a bank receivership, which the district court denied. Claimant appeals.—*Affirmed.*

*Smith & Feeney,* for appellant.

*Blythe, Markley, Rule & Clough,* for appellee.

MORLING, J.—On November 10, 1924, claimant left for collection with the City Commercial Savings Bank of Mason City, without special instructions, notes and mortgage made by Christians for $10,000, besides accumulated interest. The bank was given no authority to retain the proceeds on deposit. On

April 16, 1925, the bank wrote to the claimant, who was then in California, that it had collected the mortgage, in the amount of $10,955.60. The letter stated:

"We are enclosing herein four certificates of deposit, three in the amount of $2,500, and one in the amount of $3,455.60. We will be glad to allow you interest for the time you desire to carry these certificates, and would, of course, appreciate the business."

The certificates inclosed were dated April 16, 1925, and each (except as to amount) read:

"R. Valentine has deposited in this bank exactly three thousand four hundred fifty-five dollars sixty cents exactly dollars $3,455.60 payable in current funds to the order of same, on the return of this certificate properly endorsed 3-12 months after date with interest until maturity at the rate of four per cent per annum. This certificate will not bear interest after one year. Subject to the rules of the Savings Department. Ira W. Stinson, Cashier. Time certificate of deposit. Not subject to check."

On April 20, 1925, claimant wrote the bank:

"Yours recd. with C/Ds amt. of Christians mtg. I would have preferred Dfts however I can cash same here. As he was making his loan outside I thought it would not discommode your bank. As I have stated many times before I am anxious to have my small possession all in one place and in doing so have tried not to discommode your bank any more than I can help. Now I would like to have you place my stock in City Coml. where it would do you the most good. When do you expect to be able to pay dividends. I would like one of your late statements.

"Kind regards to you and Oliver & all there."

Claimant testified that he took the certificate for $3,455.60 to the First National Bank of Los Angeles, and deposited it on or about April 20, 1925. The other three certificates he deposited with the First National Bank of Los Angeles on the 4th or 5th day of May, 1925. His account for the three $2,500 certificates was credited with the amount of them by the First National Bank of Los Angeles. The first mentioned certificate was forwarded by the First National Bank of Los Angeles, through the clearings, and paid, without interest, on April 29, 1925. All four were indorsed in blank by claimant, and also bore the several special indorsements of the First Na-

tional Bank of Los Angeles, California, the Continental & Commercial National Bank of Chicago, and the Federal Reserve Bank of Chicago, to "pay to the order of any bank or banker, prior endorsements guaranteed." None of the indorsements is stated to be for collection. The City Commercial Bank did not open for business May 11, 1925, or afterward, and the three $2,500 certificates which were forwarded by the Federal Reserve Bank to the City Commercial Bank May 11th were not paid. Over proper objections made by the receiver, the claimant testified:

"Q. Did you have any intention, at the time you left this Christians mortgage with City Commercial Savings Bank, or at any subsequent time, to have the proceeds deposited in that bank to your account? * * * A. I did not. Q. At the time of the receipt by you of these four certificates of deposit, aggregating something over $10,000, did you have any intention to accept these certificates of deposit as a deposit in the City Commercial Savings Bank and to your credit? A. I did not. * * * Q. Mr. Valentine, did you have any intention to accept these three certificates of deposit, marked C, D, and E, as deposits, by retaining them to the 4th and 5th day of May, 1925, when they were deposited for collection in the First National Bank at Los Angeles? A. I never intended them as a deposit. * * * Q. And when you deposited them in the bank, you were merely treating them as a medium of exchange, were you? A. Yes."

The bank's vice president testified that he simply took that method of making the remittance, thinking that claimant might be induced to leave the money there, and might be able to use them in that form; that it was just their way of remitting.

The funds realized from the collection were held by the bank as claimant's agent. Instead of forwarding the funds, which, as agent, it was the bank's duty to do, it evidently mingled them with its own money, with the thought of inducing claimant to leave them on deposit, and thereby establish the relationship of bank and depositor. To this end, the bank forwarded to claimant the four certificates, thereby tendering to claimant for its money in the bank's possession the relationship of depositor at interest. The claimant might have rejected this proposal, but he did not. He acknowledged receipt of the certificates, and stated that he would have preferred drafts, but that he could cash the certificate there at Los Angeles. It may

be observed that his statement that he "could cash it here" carries the implication of more or less weight that he did not consider the bank as unauthorized to remit by draft. We have decided that one who leaves with the bank items for collection under express agreement, or under agreement implied from course of business, that proceeds of collection may be remitted by draft, is not entitled to preference. *Leach v. Iowa St. Sav. Bank of Manning*, 202 Iowa 894; *Leach v. Battle Creek Sav. Bank*, 202 Iowa 871; *Leach v. Battle Creek Sav. Bank*, 203 Iowa 507; *Leach v. Battle Creek Sav. Bank (Alexander, Intervener)*, 202 Iowa 875. In this case, the claimant did not return the certificates or reject or repudiate the act of the bank in making them out and tendering them. Claimant did not reject the offer of a depositor's relation. He kept the certificates. He thereupon became entitled to their benefit and to the contract rights represented by them, including the stipulated rate of interest. The certificates partook of the nature of promissory notes. *Mereness v. First Nat. Bank*, 112 Iowa 11; *Kushner v. Abbott*, 156 Iowa 598; *State ex rel. Carroll v. Corning St. Sav. Bank*, 136 Iowa 79; 7 Corpus Juris 647. The claimant's evidence is that he deposited them for collection. They do not purport to have been indorsed for collection, though the bank inferentially forwarded them for collection. There is nothing in the record that would deny to the First National Bank of Los Angeles the rights of a depositor in the City Commercial Bank, or to hold the certificates in its bills receivable. The First National Bank charged back to claimant the three certificates that were not paid, as it would have at some time the right to do, as purchaser on claimant's unrestricted indorsement. *Prima facie*, on the evidence, it must be held that claimant sold the certificates to the First National Bank of Los Angeles. *Acme Hay & M. F. Co. v. Metropolitan Nat. Bank*, 198 Iowa 1337. If the claimant had left the mortgage with a private collector, and such collector had tendered him his promissory note for the proceeds (offering to borrow the money), and claimant had pursued the same course as he did here, we think there could be no debate over the proposition that he accepted the note, and that, when he said he "could cash it here," he must have meant he could have sold it there. He retained the three certificates in controversy some two weeks before he deposited them. His intention whether to accept the

contract relationship of depositor tendered to him or reject it must be determined by what he manifested at the time by word and deed, and not by what he secretly purposed. The formation of a contract, the settlement of the bank's rights and relationship to claimant, depend upon what was expressed by word or deed, and not upon secret intention. *Dillon v. Anderson*, 43 N. Y. 231; *National Bank v. North*, 160 Pa. St. 303 (28 Atl. 694); *Harris v. Amoskeag Lbr. Co.*, 97 Ga. 465 (25 S. E. 519). Claimant's testimony as to what he secretly intended was not admissible to impeach or contradict his acts. Idem. We are of the opinion that the claimant, on his letter and conduct, must be held to have accepted the certificates, and that the tender and acceptance of them created the relationship of bank and depositor. Claimant testified that he did not know that the bank was insolvent or in a failing condition when he received the certificates. There is no allegation of fraud or mistake, or claim for rescission. There is no evidence that the certificates or the proceeds of the collection would not have been paid, if demanded prior to the closing of the bank. The larger certificate was presented and paid. The evidence is that the receiver took into his possession bank funds of more than $75,000. There is no evidence that the bank was refusing payment before it closed. We think it must be held that the proceeds of the collection or the certificates would have been paid, if, instead of accepting the certificates, claimant had required payment. On this state of facts, he is not entitled to a preference. *Leach v. Exchange St. Bank of Stuart*, 203 Iowa 790.

The court below so held, and its judgment is—*Affirmed*.

EVANS, C. J., and DE GRAFF and ALBERT, JJ., concur.