OAK GROVE FARMERS MUTUAL INSURANCE COMPANY, Respondent, vs. ALMENA STATE BANK and another, Appellants.

*September 13—October 9, 1934.*

184

*Wm. A. Cameron* of Rice Lake, for the appellants.
*Chas. A. Taylor* of Barron, for the respondent.

NELSON, J. The contentions of the parties present the following questions for determination:

(1) Was the relationship between the bank and the plaintiff prior to October 28th that of trustee and *cestui que trust* or that of debtor and creditor?

(2) Assuming that a trust relationship existed up to October 28th or 29th, was that relationship changed to that of debtor and creditor by virtue of the bank's sending to the plaintiff its cashier's check, which the plaintiff promptly deposited with its bank for collection?

(3) Assuming that the trust relationship existed, were the collections sufficiently traced to the Commissioner of Banking, or identified as being in the bank when he took it over for liquidation?

As to the first question, it is our opinion that the relationship existing between the bank and the plaintiff up to October 28th was that of trustee and *cestui que trust,* not debtor and creditor. The assessment receipts were left with the bank for collection with the definite understanding that the collection proceeds were to be remitted once a week up to October 15th and each day thereafter as collections were made. The plaintiff had no account in the bank subject to check, and no way of withdrawing the funds collected, except upon demand or voluntary remittance or delivery of them. The bank clearly assumed the duty of making the collections and of holding the proceeds as a trust fund until paid over to the plaintiff. *McLeod v. Evans,* 66 Wis. 401, 28 N. W. 173, 214, and *Francis v. Evans,* 69 Wis. 115, 33 N. W. 93, are authority for the proposition that moneys collected by a bank for another belong to such other, and will be regarded as trust funds in the custody of the bank, although the rule enunciated in these cases which did not require the trust funds to be traced or identified, as now required to support a preferred claim, was thereafter overruled in *Nonotuck Silk Co. v. Flanders,* 87 Wis. 237, 58 N. W. 383, and

followed in *Dowie v. Humphrey,* 91 Wis. 98, 64 N. W. 315.; *Hyland v. Roe,* 111 Wis. 361, 87 N. W. 252; *Boyle v. Northwestern National Bank,* 125 Wis. 498, 103 N. W. 1123, 104 N. W. 917. To the proposition that moneys collected by a bank are trust funds, see also *Boyle v. Northwestern National Bank, supra;* and *Emigh.v. Earling,* 134 Wis. 565, 115 N. W. 128.

As to the second question, it is our opinion that the relationship of trustee and *cestui que trust* did not end and the relationship of debtor and creditor begin when the bank mailed to the plaintiff, on October 27th, the canceled assessment notices and its cashier's check for $860, which the plaintiff received and deposited in the Rice Lake Bank for collection.

The defendants earnestly contend that by accepting the cashier's check and depositing it with its bank for collection the plaintiff thereby accepted the defendant bank as its debtor. It is held that where a person directs a bank to make a collection and to remit the proceeds thereof by draft or cashier's check, the fiduciary relationship ceases when the draft or check is sent and received. *Leach v. City-Commercial Savings Bank,* 203 Iowa, 398, 212 N. W. 746; *Leach v. Exchange State Bank of Stuart,* 203 Iowa, 790, 211 N. W. 516; *Leach v. Iowa State Savings Bank,* 202 Iowa, 894, 211 N. W. 517; *Leach v. Battle Creek Savings Bank,* 202 Iowa, 871, 211 N. W. 519, 520; that when a person entitled to the trust fund accepts a draft or cashier's check at a bank the trust relationship ceases and the relation of debtor and creditor is substituted therefor. *Leach v. Citizens' State Bank,* 204 Iowa, 954, 216 N. W. 267; *Massey-Harvester Co. v. First State Bank,* 122 Kan. 483, 252 Pac. 247; that deposits made by chain stores in excess of balances agreed to be maintained and which were to be remitted each day by draft to the companies or to their particular banks, were not trust funds entitling the companies to preferred claims. *Reichert*

*v. American State Savings Bank,* 264 Mich. 366, 249 N. W. 876; *Great Atlantic & Pacific Tea Co. v. Citizens' National Bank,* 2 Fed. Supp. 29, affirmed, 66 Fed. (2d) 883. However, in *Skinner v. Porter,* 45 Idaho, 530, 263 Pac. 993, 73 A. L. R. 59; *Goodyear Tire & Rubber Co. v. Hanover State Bank,* 109 Kan. 772, 204 Pac. 992, 21 A. L. R. 677, and other cases that might be cited (see note III to *Skinner v. Porter* in 73 A. L. R. 59, p. 71), it was held that the relationship of principal and agent existing between a bank and one for whom it makes a collection is not changed to that of debtor and creditor, so as to defeat a claim for preference against an insolvent bank by the attempt of the bank to remit the collection proceeds by cashier's check instead of cash. It was intimated in one of the Iowa cases cited, *Leach v. City-Commercial Savings Bank, supra,* that a different question would have confronted the court in that case had the bank, on its own initiative, attempted to settle by draft instead of cash. In *Milne v. Veigel,* 170 Minn. 66, 211 N. W. 954, it was held that a special deposit had lost its character as such,—the decision being grounded on the proposition that the cashier's check sent by the bank was received and retained by the plaintiff without protest for a relatively long time, from April 8th to May 3d. In *Skinner v. Porter, supra,* where a deed was sent by Kuna State Bank to the Bank of Hansen, with instructions to make collection, the collection made and the amount thereof remitted by cashier's check (which was never paid because the Bank of Hansen closed its doors prior to the time that the check was presented for payment), it was held that the claim was properly preferred. The court said:

"Clearly, therefore, the Bank of Hansen was not authorized to retain the proceeds in its hands, and acted only as agent for the Kuna State Bank. [Citing cases.] Nor would it be sound to hold that the relation of principal and agent would change by the mere act of remitting by cashier's checks

instead of sending the cash. This would be compelling the Kuna State Bank to have become a creditor only of the Bank of Hansen, whether such were desired or not. The record permits of no other conclusion than that the Kuna State Bank intended the Bank of Hansen to do no more than to make collection of the amount due on the contract and remit the proceeds, without any desire on the part of the Kuna State Bank to become a mere creditor of the collecting bank."

It is our opinion that in situations like this the following rule should apply: When a trust relationship exists between a bank and another as to moneys collected by the bank for such other, and the bank, on its own initiative, attempts to remit the proceeds by draft or cashier's check which is received by the *cestui que trust,* the fiduciary relationship does not cease until the *cestui que trust* holds the check or draft for such length of time as evidences his acceptance of the bank as his debtor. A *cestui que trust* to whom a draft or cashier's check is sent on the bank's own initiative in purported payment of a trust fund belonging to him should have such time as is reasonably required to present the check for payment either personally or by his agent.

In this case the plaintiff's treasurer went to the bank on September 25th to ascertain how much had been collected by the bank. The information given him was indefinite and certainly misleading. He in effect stated to the bank that he would wait until the amount was ascertained and payment made to him; whereupon he was told that it would take some time to comply with such request, but that the bank would send the collections out. The cashier's check, covering only a part of the collections, was received by the plaintiff on the afternoon of October 28th or the morning of October 29th. The plaintiff promptly deposited the check with its bank for collection and thereby made its bank its collecting agency. Under such circumstances we do not think it would be sound to hold that the trust relationship was changed to that of debtor and creditor.

As to the third question, it is our opinion that the trust funds were sufficiently traced. The bank at all times up to October 31st, when the commissioner took it over, had in its counter cash and till more money than the amount of the undelivered collections. It is presumed that when a trustee mingles trust funds with his own individual funds and thereafter makes payments therefrom for his own purposes but not in excess of the funds belonging to him, such payments are out of the funds which belong to the trustee individually. Such is the general rule and the established law of this state. In *Emigh v. Earling,* 134 Wis. 565, 115 N. W. 128, Mr. Justice DODGE, speaking for the court, said:

"It is a principle generally established and fully adopted in this state, as appears by *Bromley v. C., C., C. & St. L. R. Co.* 103 Wis. 562, 79 N. W. 741, and *Boyle v. N. W. Nat. Bank,* 125 Wis. 498, 103 N. W. 1123, 104 N. W. 917, that when moneys belonging to other persons are received and mingled in a general fund with moneys belonging to the depositary and then such depositary or trustee pays out generally from such fund for his own purposes, there is a presumption of law that such payments are made from the moneys in said fund belonging to him and do not constitute wrongful misappropriations of the moneys of the *cestui que trust,* which he has no right to pay out in that way, but that they remain on deposit."

That doctrine was approved in *Union State Bank v. Peoples State Bank,* 192 Wis. 28, 211 N. W. 931. In the very recent case of *In re Warren's Bank,* 209 Wis. 121, 244 N. W. 594, where a special deposit, not a trust fund, was considered, it was held, Mr. Justice OWEN speaking for the court:

"However, the idea that the commingling of moneys with the funds of the bank destroyed the character of the special deposit because the deposit could not be identified, was exploded in *Fogg v. Tyler,* 109 Me. 109, 82 Atl. 1008, where it was held that the general principles relating to trust funds should be applied, and so long as the amount of money in

the bank exceeded the amount of the deposit it should be presumed that all moneys paid out by the bank were paid out of its own and not out of trust funds."

We are of the opinion that the plaintiff, given the benefit of this well-established presumption, sufficiently traced the funds into the hands of the Commissioner of Banking, and that the trial court was right in adjudging that the plaintiff's claim be allowed as a preferred claim.

*By the Court.*—Judgment affirmed.